**2021 IL 126192**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126192)

*In re* MARRIAGE OF DIANA LYNN BARR CRECOS, Appellee, and GREGORY CRECOS, Appellant.

*Opinion filed May 20, 2021.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Overstreet, and Carter concurred in the judgment and opinion.

Justice Neville took no part in the decision.

**OPINION**

¶ 1    Respondent Gregory Crecos appealed an award of attorney fees in favor of petitioner Diana Lynn Barr Crecos. The appellate court dismissed the appeal based upon lack of jurisdiction. 2020 IL App (1st) 182211. The appellate court

characterized the fee award as an interim fee award, subject to correction in the final judgment. *Id.* ¶ 18. The appellate court also noted that other issues in the case remained unresolved. *Id.* For that reason, the appellate court held that the fee award was not a final judgment ripe for review under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). 2020 IL App (1st) 182211, ¶ 21. This court subsequently allowed Gregory's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2019).

¶ 2                                    BACKGROUND

¶ 3        Diana Lynn Barr Crecos initiated divorce proceedings from Gregory Crecos in 2007. A final judgment dissolving the marriage and allocating marital property was entered in Cook County circuit court on December 24, 2009. Gregory appealed, and the judgment was affirmed. *In re Marriage of Crecos*, 2012 IL App (1st) 102158-U (*Crecos I*). Both parties filed postdecree petitions. Diana filed a timely motion for substitution of judge, which was denied. The judge then entered a series of orders against Diana. Diana appealed, arguing as a threshold issue that the trial court erred in denying her motion for substitution of judge as of right. The appellate court agreed that the trial court erred in denying Diana's motion for substitution of judge. *In re Marriage of Crecos*, 2015 IL App (1st) 132756 (*Crecos II*). Given that error, all orders entered after the erroneous denial of the motion for substitution of judge were "void." *Id.* ¶ 28. The *Crecos II* court therefore reversed the orders entered by the circuit court and remanded the case to the trial court. *Id.*

¶ 4        On March 18, 2016, Diana filed a petition pursuant to section 508(a)(3.1) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508(a)(3.1) (West 2016)) for attorney fees and costs incurred in the appeal of *Crecos II*. On March 31, 2016, Diana filed a petition pursuant to section 508(a)(3) of the Act (*id.* § 508(a)(3)) for attorney fees and costs incurred in the defense of *Crecos I*.

¶ 5        On September 17, 2018, the trial court ordered Gregory to pay Diana's attorney fees in the amount of $32,952.50 for the *Crecos I* appeal and $89,465.50 for the *Crecos II* appeal. The trial court's order included a Rule 304(a) finding that "there is no just reason to delay enforcement or appeal of this order." Gregory then appealed the trial court's order, arguing that the trial court should not have awarded Diana all the fees she sought.

¶ 6     As a threshold matter, the appellate court asked the parties to submit briefs concerning the court's jurisdiction. 2020 IL App (1st) 182211, ¶ 10. Both parties argued that the appellate court had jurisdiction because the trial court did not enter an interim award of fees under section 501(c-1) of the Act (750 ILCS 5/501(c-1) (West 2016)) but instead entered a final award of attorney fees under section 503(j) of the Act (*id.* § 503(j)). 2020 IL App (1st) 182211, ¶ 10. The parties also argued that section 501(c-1) did not apply because the appeals involved postdecree petitions. *Id.* ¶ 13.

¶ 7     Citing *In re Marriage of Oleksy*, 337 Ill. App. 3d 946 (2003), the appellate court held that section 501(c-1) applies to both predissolution and postdissolution decree proceedings. 2020 IL App (1st) 182211, ¶ 13. In addition, because section 503(j) applies only when the court has resolved " 'all *** issues between the parties' " other than the award of attorney fees, that section did not apply because some issues remained pending in the case. *Id.* (quoting 750 ILCS 5/503(j) (West 2018)). The appellate court found that the September 18, 2018, order awarded interim attorney fees under section 501(c-1), which are temporary in nature and subject to adjustment. *Id.* ¶ 14.

¶ 8     The appellate court concluded that this case was similar to *In re Marriage of Derning*, 117 Ill. App. 3d 620 (1983). 2020 IL App (1st) 182211, ¶ 16. In *Derning*, the trial court divided the marital property but reserved its ruling on the issue of attorney fees. 117 Ill. App. 3d at 621-22. The wife appealed. The *Derning* court held that it had jurisdiction of the case only if the divorce decree was a final judgment or if the fees were a separate claim pursuant to Rule 304(a). *Id.* at 626. Based upon this court's decision in *In re Marriage of Leopando*, 96 Ill. 2d 114 (1983), *Derning* held that an attorney fee judgment in a dissolution of marriage case was not a separate claim but rather was integral to the order dissolving the parties' marriage. *Derning*, 117 Ill. App. 3d at 627.

¶ 9     The appellate court held that the September 17, 2018, order for attorney fees, like that in *Derning*, was inextricably intertwined with the property issues that remained partially unresolved. 2020 IL App (1st) 182211, ¶ 18.[1] The claim for attorney fees was not a separable claim for purposes of appeal, and the order

---

[1]Remaining issues in the case included Gregory's claim that Diana took his personal property, as well as Gregory's pending child support modification claim.

awarding attorney fees did not finally resolve any separate claim. *Id.* The court thus held that, "when the trial court awards fees for an appeal in a divorce case and the trial court has issues other than fees still pending, the award grants interim fees not subject to immediate appeal." *Id.* In addition, the inclusion of Rule 304(a) findings did not make the trial court's interlocutory order final and appealable. *Id.* ¶ 19. The appellate court therefore dismissed the appeal for lack of jurisdiction.

¶ 10                                                     ANALYSIS

¶ 11        On appeal, Gregory argues that the appellate court had jurisdiction to determine the merits of the circuit court's fee award because the circuit court's order was final and the circuit court made the requisite Rule 304(a) findings to make the order appealable. Rule 304(a) provides, in pertinent part,

> "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. C. R. 304(a) (eff. Mar. 8, 2016).

Diana agrees with Gregory, joining his argument that the appellate court had jurisdiction to review the circuit court's September 18, 2018, order in its entirety. Because the issue of whether a court has jurisdiction presents an issue of law, our review is *de novo*. *In re A.H.*, 207 Ill. 2d 590, 593 (2003).

¶ 12        The issue of attorney fees is addressed in section 508 of the Act. 750 ILCS 5/508 (West 2018). Section 508(a) provides:

> "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. Interim attorney's fees and costs may be awarded from the opposing party, in a pre-judgment dissolution proceeding in accordance with subsection (c-1) of Section 501 and in any other proceeding under this subsection. At the conclusion of any pre-judgment dissolution proceeding under this subsection, contribution to attorney's fees and costs may be awarded from the opposing party in

- 4 -

accordance with subsection (j) of Section 503 and in any other proceeding under this subsection. Fees and costs may be awarded in any proceeding to counsel from a former client in accordance with subsection (c) of this Section." *Id.* § 508(a).

¶ 13    Section 508(a) thus contemplates three distinct types of fee proceedings: (1) interim attorney fees and costs in accordance with section 501(c-1) or section 508(a)(5) (*id.* §§ 501(c-1), 508(a)(5)), (2) contribution to attorney fees and costs in accordance with section 503(j) or 508(a) (*id.* §§ 503(j), 508(a)), and (3) fees and costs to counsel from a former client in accordance with section 508(c) (*id.* § 508(c)).

¶ 14    The appellate court held that it did not have jurisdiction because the September 17, 2018, fee award was an interim fee award pursuant to section 501(c-1). Citing *Oleksy*, the appellate court held that section 501(c-1) applies to both predissolution and postdissolution decree proceedings. 2020 IL App (1st) 182211, ¶ 13 (citing *Oleksy*, 337 Ill. App. 3d at 950). This is incorrect.

¶ 15    Section 501(c-1) provides:

"As used in this subsection (c-1), 'interim attorney's fees and costs' means attorney's fees and costs assessed from time to time while a case is pending, in favor of the petitioning party's current counsel, for reasonable fees and costs either already incurred or to be incurred, and 'interim award' means an award of interim attorney's fees and costs. Interim awards shall be governed by the following:

(1) Except for good cause shown, a proceeding for (or relating to) interim attorney's fees and costs *in a prejudgment dissolution proceeding* shall be nonevidentiary and summary in nature." (Emphasis added). 750 ILCS 5/501(c-1) (West 2018).

As the parties point out, Public Act 96-583 (eff. Jan. 1, 2010) amended section 501(c-1) to expressly state that the subsection applies only to prejudgment dissolution proceedings.[2] See also 750 ILCS 5/508(a) (West 2018) ("Interim

---

[2]With regard to interim fee petitions in postdissolution proceedings, Public Acts 99-90 (eff. Jan. 1, 2016) and 99-763 (eff. Jan. 1, 2017) added subsection 508(a-5), which provides that, "A petition

attorney's fees and costs may be awarded from the opposing party, in a pre-judgment dissolution proceeding in accordance with subsection (c-1) of section 501 ***."). *Oleksy* was decided in 2003, prior to the 2010 amendment. The fee awards in this case arose from postdissolution proceedings and were awarded in 2018, so neither *Oleksy* nor section 501(c-1) applies.

¶ 16   The appellate court also found that the September 17, 2018, fee award met the statutory definition of "interim attorney fees" because the case was still pending, "awaiting retrial on issues Gregory raised." 2020 IL App (1st) 182211, ¶ 14. Here too, the appellate court is incorrect. "An interim award of attorney fees is strictly temporary in nature, subject to adjustment (including, if necessary, the disgorgement of overpayments to an attorney) at the close of the dissolution proceeding ***." *In re Marriage of Arjmand*, 2017 IL App (2d) 160631, ¶ 20.

¶ 17   The trial court's award of attorney fees to Diana was neither temporary in nature nor subject to adjustment. The underlying dissolution of marriage has long been resolved. A final judgment dissolving the parties' marriage and allocating marital property was entered on December 24, 2009, and was affirmed in *Crecos I* in 2012. The order on appeal of Diana's motion for substitution of judge was entered in *Crecos II* in 2015. The fees awarded were incurred in the appeals of *Crecos I* and *Crecos II*. The appeals in those cases have been fully adjudicated, so no more fees can or will be incurred in connection with the appeals. Gregory's remaining postdissolution claims would not modify or otherwise affect the amount of fees incurred in the appeals of *Crecos I* and *Crecos II*. The appellate court therefore erred in holding that the order in this case awarded interim fees, so that the order was not a final judgment ripe for appellate review under Rule 304(a).

¶ 18   The appellate court's mischaracterization of the fee awards goes to the heart of the case. In the context of predissolution cases, this court has held that a petition for dissolution advances a single claim: the parties' request for an order dissolving their marriage. *Leopando*, 96 Ill. 2d at 119. The other issues involved, including custody, property distribution, and support, are ancillary to the cause of action and do not represent separate, unrelated claims. *Id.* Rather, those issues are separate

for temporary attorney's fees in a post-judgment case may be heard on a non-evidentiary summary basis." 750 ILCS 5/508(a) (West 2018).

issues relating to the same claim. *Id.* For that reason, *Leopando* held that, because issues raised in a dissolution of marriage case are not separate claims, those issues are not appealable under Rule 304(a). *Id.* at 120.

¶ 19    This case, however, involves postdissolution fee awards. As recognized by the court in *In re Marriage of Duggan*, 376 Ill. App. 3d 725, 735 (2007), postdissolution proceedings present unusual circumstances in civil practice because the trial court enters a final judgment resolving all issues at the time of dissolution, but that judgment may be subsequently modified at the request of the parties, sometimes repeatedly.

¶ 20    The districts of our appellate court are split concerning whether postdissolution petitions are best described as new claims or new actions. This court has not directly addressed the issue. Adding to the confusion is the use of the words "claim" and "action" interchangeably in both this court and the appellate court.

¶ 21    The distinction matters. As the court explained in *In re Marriage of Teymour*, 2017 IL App (1st) 161091, ¶ 14:

"If each pending, unrelated matter constitutes a separate 'claim' in the same action, a Rule 304(a) finding is required to appeal from an order disposing of only one. On the other hand, if each unrelated postdissolution matter constitutes a separate 'action,' an order disposing of only one of those actions constitutes a final appealable judgment under Rule 301, notwithstanding that other actions remain pending. In that instance, Rule 304(a) would not apply, negating the need for a finding as contemplated by that rule. Such a scenario would also require a litigant to file a notice of appeal within 30 days or entirely forgo appellate review of that order."

¶ 22    The Appellate Court, First and Third Districts, hold that an order disposing of one of several pending unrelated postdissolution matters is a separate action, so that no Rule 304(a) finding is required in order to bring an appeal. See *In re Marriage of Carr*, 323 Ill. App. 3d 481 (1st Dist. 2001); *In re Marriage of A'Hearn*, 408 Ill. App. 3d 1091 (3d Dist. 2011). But see *Teymour*, 2017 IL App (1st) 161091 (joining the decisions of the Second and Fourth Districts and declining to follow First District precedent).

¶ 23    In *Carr*, a dissolution of marriage judgment was entered in 1989. 323 Ill. App. 3d at 482. In 1998, the husband filed a petition to set child support, seeking a modification of the parties' previous marital settlement agreement. *Id.* The trial court granted the petition, and both parties filed motions to reconsider. *Id.* at 483. Before the trial court decided the motions to reconsider, the wife filed a petition for contribution to attorney fees. *Id.* On August 27, 1999, the trial court granted the husband's motion to reconsider and denied the wife's motion to reconsider. *Id.* On March 9, 2000, the trial court ruled on the wife's request for fees. *Id.* The wife then filed an appeal from the trial court's orders granting the husband's petition to set child support and ordering the payment amounts retroactive.

¶ 24    *Carr* dismissed the appeals, holding that the wife should have appealed within 30 days of the trial court's August 27, 1999, ruling, which finally disposed of the husband's petition to modify child support. *Id.* at 485. *Carr* rejected the wife's claim that the trial court's March 9, 2000, order rendered the August 27, 1999, ruling final. *Id.* at 484-85. *Carr* held that the "March 9, 2000, order addressed separate and unrelated claims from those issues raised in [the husband's] petition to set child support." *Id.* at 485. *Carr* therefore dismissed the wife's appeal of the August 27, 1999, order for lack of jurisdiction. *Id.*

¶ 25    As the *Teymour* court observed, although *Carr* used the word "claims," First District decisions subsequent to *Carr* have interpreted *Carr* as holding that the separate postdissolution claims were separate postdissolution actions, which would eliminate the need for a Rule 304(a) finding. *Teymour*, 2017 IL App (1st) 161091, ¶ 26 (citing *In re Marriage of Ehgartner-Shachter*, 366 Ill. App. 3d 278, 284-85 (1st Dist. 2006)). The *Teymour* court further noted that the First District had "repeatedly relied on this so-called jurisdictional rule to find no Rule 304(a) finding is required to appeal, so long as the matter pending in the trial court is unrelated to the matter on appeal. [Citations.]" *Id.*

¶ 26    When faced with the issue the first time, the Second District declined to follow *Carr*. In *In re Marriage of Alyassir*, 335 Ill. App. 3d 998 (2003), a judgment dissolving the parties' marriage was entered in 1993. In 2001, the petitioner filed a two-count postdissolution petition. *Id.* at 999. Count I sought increased child support, and count II requested a rule to show cause why respondent should not be held in contempt for failing to pay medical bills that were his responsibility. *Id.* The

trial court granted petitioner relief on count I but continued the proceedings on count II. *Id.* The trial court later denied petitioner's motion to reconsider the ruling on count I. *Id.* Petitioner then filed a notice of appeal from the orders entered on count I, while count II remained pending. *Id.*

¶ 27 Although not raised by the parties, the Second District addressed the issue of its jurisdiction over the appeal. *Id.* Citing *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 464 (1990), the court noted that "[w]hen an action involves multiple claims for relief, an order that finally resolves only one claim is not immediately appealable" unless the court enters a Rule 304(a) finding. *Alyassir*, 335 Ill. App. 3d at 999. The Second District declined to follow the *Carr* decision, finding that decision to be "unsound" because the decision omitted a crucial step. *Id.* at 1000. *Carr* failed to consider that, even if a postdissolution case presents separate claims, that meant

"*only* that an order that finally resolves fewer than all of them *can be made immediately appealable* by including a written Rule 304(a) finding. Separability of issues is a necessary condition for a Rule 304(a) appeal. It is not a *sufficient* condition. A proper Rule 304(a) finding is still required." (Emphases in original). *Id.*

*Alyassir* also disagreed with *Carr* on the basis that *Carr* removed the exercise of discretion given to the trial court to decide whether judicial economy was served by a piecemeal appeal. *Id.* at 1001. Because the order appealed from resolved only one of petitioner's claims and included no Rule 304(a) finding, *Alyassir* held that the notice of appeal did not confer jurisdiction and must be dismissed. *Id.*

¶ 28 The Fourth District agreed with the reasoning of the Second District in *Alyassir*. *In re Marriage of Gaudio*, 368 Ill. App. 3d 153, 157 (2006). *Gaudio* declined the respondent's request to draw a distinction between claims brought in the same petition versus those brought in separate petitions. *Id.* at 158. *Gaudio* held that, if an order finally resolves a separate claim but leaves other claims pending, regardless of whether the issues are raised in a single petition or separate petitions, the trial court must make a Rule 304(a) finding before the order is appealable. *Id.*

¶ 29 The Second District then expanded upon *Alyassir* in *Duggan*. The court in *Duggan* noted that *Alyassir* held that, where one postdissolution petition raises

multiple claims, a Rule 304(a) finding is required for the appeal of a final judgment on fewer than all the claims raised by that petition. *Duggan*, 376 Ill. App. 3d at 741. The court then observed that prior cases had also implicitly treated postdissolution petitions as raising new claims in the dissolution action, regardless of whether the claims were raised in one petition or several. *Id.* The court indicated its continued adherence to that position, citing this court's decisions in *In re Custody of Purdy*, 112 Ill. 2d 1 (1986), and *In re Marriage of Kozloff*, 101 Ill. 2d 526 (1984), in support.

¶ 30    At issue in *Kozloff* was whether each postdissolution petition constituted a new proceeding for venue purposes, thereby allowing a party to seek a change of venue as of right on each petition, so long as the trial judge had not made a substantive ruling. 101 Ill. 2d at 529-30. Recognizing the potential for serious abuse of the venue statute, *Kozloff* held that "post-decree petitions do not constitute new actions, but merely continuations of the dissolution proceeding, and a substantive ruling on one petition will preclude a change of venue as of right on another." *Id.* at 531. The *Duggan* court read *Kozloff* as enunciating this court's "own view of postdissolution petitions as stating new claims within the dissolution action rather than commencing new actions." *Duggan*, 376 Ill. App. 3d at 737. Further, the court held that *Kozloff*'s concerns about judge shopping were based on a view of postdissolution proceedings as an extension of the original dissolution action, involving the same litigants and the same procedural history, so that the decision in that case was not confined to cases involving changes of venue. *Id.* at 737-38.

¶ 31    With regard to this court's decision in *Purdy*, *Duggan* described that case as holding that postdissolution matters are to be considered separately, so if a final order has been entered on a postdissolution petition and the trial court has entered a Rule 304(a) finding, a party can appeal that order even though another postdissolution matter is still pending before the trial court. *Id.* at 739.

¶ 32    In *Purdy*, the father filed a petition for change of custody four years after a judgment of dissolution was entered. 112 Ill. 2d at 3. The father's petition for change of custody was granted, leaving the issue of the summer visitation schedule for later resolution. *Id.* The trial court included Rule 304(a) language in its order, and the mother appealed. *Id.* Based upon *Leopando*, the appellate court dismissed the appeal on the ground that the summer visitation schedule was part of the same,

- 10 -

single claim as the custody modification, so that there was no final order that could be appealed pursuant to Rule 304(a). *Id.*

¶ 33     This court reversed the appellate court, holding that *Leopando* did not apply to postdissolution proceedings. *Id.* at 5. *Purdy* held that the order for change of custody was a final order, because the issue of custody arose "not as a matter ancillary to the issue of dissolution or any other issue, but rather as a result of the father's post-dissolution petition for change of custody." *Id.* Further, the order in that case was final because all related claims had been decided except for the extent of the mother's summer visitation, a matter that is always subject to revision. *Id.* *Purdy* did not address whether postdissolution petitions are best viewed as new actions or new claims. In distinguishing *Leopando*, however, *Purdy* stated:

> "Unlike the situation in *Leopando* in which the *cause of action* was a petition for dissolution of marriage and only the issue of custody had been decided, here the *cause of action* is a petition for a change of custody and all related claims have been decided except for the extent of the mother's summer visitation, a matter that is always subject to revision. Thus, the kind of piecemeal litigation that the decision in *Leopando* was intended to prevent cannot occur in this context." (Emphases added and omitted.) *Id.*

¶ 34     The *Duggan* court acknowledged *Purdy*'s use of the term "cause of action" but concluded that the "cause of action" word choice did not reflect the *Purdy* court's view of postdissolution petitions as new actions. *Duggan*, 376 Ill. App. 3d at 739. The court noted that *Purdy*'s first reference to "cause of action" was in a quote from *Leopando*, where the *Leopando* court used "cause of action" as a rough equivalent to "claim." *Id.* (" ' "A petition for dissolution advances a single claim; that is, a request for an order dissolving the parties' marriage. The numerous other issues involved *** are merely questions which are ancillary to the cause of action." ' " (Emphasis omitted.) (quoting *Purdy*, 112 Ill. 2d at 4-5, quoting *Leopando*, 96 Ill. 2d at 119)). The *Duggan* court determined that the

> "core holding of *Purdy* is that postdissolution matters are to be considered separately, so that if a final order has been entered on a postdissolution petition, where the trial court has entered a Rule 304(a) finding a party may appeal that order even while a postdissolution matter is still pending before the trial court." *Id.*

¶ 35    The *Duggan* court thus concluded that the *Leopando*, *Kozloff*, and *Purdy* decisions harmonized with one another, explaining:

> "*Leopando*, issued in 1983, was the first of the three. It enunciated the supreme court's view that, prior to the entry of a judgment of dissolution, the issues involved in a divorce action are so interrelated that they constitute one claim and thus the resolution of fewer than all issues cannot be a final order. [Citation.] *Kozloff* was issued one year later and held that postdissolution proceedings are sufficiently related to the original dissolution action that they should be viewed as a continuation of that action, not as new actions. [Citation.] Finally, in 1987 *Purdy* clarified that *Leopando*'s 'all-one-claim' approach does not govern postdissolution petitions, so that an order resolving the matters raised in such a petition is a final order and may be appealed pursuant to Rule 304(a). [Citation.] When read together, these cases support the conclusion that a postdissolution petition does not commence a new action but instead raises a new claim in the dissolution action, and that a Rule 304(a) finding is therefore necessary to appeal a ruling on one such claim when another remains pending." *Id.* at 740-41.

¶ 36    Justice O'Malley filed a special concurrence in *Duggan*, agreeing with the majority on the merits of the appeal but disagreeing with the majority's discussion of the nature of postdissolution petitions. *Id.* at 746-57 (O'Malley, J., specially concurring). Justice O'Malley would have followed the *Carr* analysis. *Id.* at 747. Justice O'Malley would have read *Kozloff* narrowly to apply only in the change of venue context and not as extending to jurisdictional issues. *Id.* at 748. To the extent that *Kozloff* did indicate that a postdissolution petition raises a claim in the original proceeding, *Purdy* effectively overruled that holding. *Id.* at 749. Justice O'Malley asserted that *Purdy* directly contradicted *Kozloff* when *Purdy* stated that the " 'cause of action [was] a petition for change in custody.' " *Id.* (quoting *Purdy*, 112 Ill. 2d at 5). Justice O'Malley also disagreed with the majority's minimization of the "cause of action" language. Justice O'Malley thus did not concur in the majority's holding that a postdissolution petition raises a new claim in the original dissolution action. *Id.* at 753.

¶ 37    Subsequent to the preceding decisions, this court was presented with the question of whether a postdissolution order terminating maintenance was a final

and appealable order, without a Rule 304(a) finding, when a civil contempt petition remained pending in the trial court. *In re Marriage of Gutman*, 232 Ill. 2d 145 (2008). Citing *Marsh*, 138 Ill. 2d at 464-65, *Gutman* stated that:

"Absent a Rule 304(a) finding, a final order disposing of fewer than all of the claims is not an appealable order and does not become appealable until all of the claims have been resolved. [Citation.] This court has defined a 'claim' as 'any right, liability or matter raised in an action.' [Citation.] The rule was meant 'to discourage piecemeal appeals in the absence of a just reason and to remove the uncertainty which existed when a final judgment was entered on fewer than all of the matters in controversy.' [Citation.]" *Gutman*, 232 Ill. 2d at 151.

¶ 38        *Gutman* then rejected the appellate court's holding that the pending contempt petition was entirely separate from the dissolution proceeding, so that the order terminating maintenance was a final order as to all claims in the dissolution action and did not require a Rule 304(a) finding to be appealable. *Id. Gutman* explained that, under Illinois Supreme Court Rule 304(b)(5) (eff. Jan. 1, 2006), only contempt judgments that impose a penalty are final, appealable orders. *Gutman*, 232 Ill. 2d at 153. A pending contempt petition thus was not an independent action separate from the underlying case. *Id.* at 152. *Gutman* therefore held that the wife's contempt petition and the two maintenance petitions raised claims for relief in the same action, so that the order terminating maintenance was final as to fewer than all claims in the action. *Id.* at 156. The wife's appeal of the maintenance petition, then, filed before the resolution of the contempt petition and without a Rule 304(a) finding, was premature and did not confer jurisdiction on the appellate court. *Id.*

¶ 39        Following *Gutman*, the Appellate Court, Third District, considered whether a husband's appeal of the trial court's discovery sanction was final and appealable under Rule 301, when the husband's petition for rule to show cause and the wife's petition to extend maintenance remained pending in the trial court. *A'Hearn*, 408 Ill. App. 3d 1091. *A'Hearn* did not believe that *Gutman* resolved the conflict within the appellate court but instead "simply held that the wife's contempt petition was not a separate claim." *Id.* at 1097. *A'Hearn* agreed with *Carr* that postdissolution proceedings are generally new actions. *A'Hearn* also agreed with Justice O'Malley's special concurrence in *Duggan*, which would find that *Kozloff*'s holding was narrow and was limited to venue. *Id.* at 1096. In addition, *A'Hearn*

agreed with Justice O'Malley that, if a postdecree petition was actually a continuation of the original dissolution proceedings, there would never actually be a postdecree petition, and *Purdy* would be rendered superfluous. *Id.* The *A'Hearn* court did not think the *Duggan* court's "approach appropriately acknowledge[d] the significance of *Purdy* or [was] flexible enough to accommodate the reality of postdissolution litigation." *Id.* at 1097. Seizing upon *Purdy*'s "cause of action" language, *A'Hearn* described *Purdy* as holding that a "father's postdissolution motion for custody constituted a separate cause of action." *Id.* at 1094. *A'Hearn* recognized the desire to avoid piecemeal appeals but believed the "*Carr* approach, while perhaps allowing more appeals, upholds the trial court's intent in entering a dispositive order." *Id.* at 1097.

¶ 40       The First District revisited the jurisdictional issue following the *Gutman* and *A'Hearn* decisions, particularly considering whether *Gutman* overruled *Carr*. *In re Marriage of Demaret*, 2012 IL App (1st) 111916. The *Demaret* court agreed with *A'Hearn* that *Gutman* "did not resolve the fundamental conflict of whether postdissolution petitions should be treated as new claims of the original dissolution action, mandating a Rule 304(a) finding when fewer than all pending petitions are resolved, or as separate actions under Rule 301, if the pending actions are not related." *Id.* ¶ 35. *Demaret* agreed with *A'Hearn* that postdissolution proceedings are generally new actions and that no conflict existed between *Gutman* and *Carr*. *Id.* ¶ 36.

¶ 41       Despite the First District's continued adherence to the "cause of action" analysis, however, the Third Division of the Appellate Court, First District, again reviewed the case law concerning an appellate court's jurisdiction over postdissolution matters and elected to join the decisions of the Second and Fourth Districts, rather than the First District precedent. *Teymour*, 2017 IL App (1st) 161091, ¶ 41. Beginning its review with the decision in *Carr*, the court in *Teymour* observed that *Carr* did not acknowledge *Purdy* or Rule 304(a) and did not cite any legal authority in support of its finding that an order disposing of one of several pending postdissolution claims may be appealed by virtue of the claims being "separate and unrelated." *Id.* ¶ 26. The court also disagreed with *A'Hearn*'s reading of *Purdy*, believing that *A'Hearn* conflated *Purdy*'s reference to a "cause of action" with an "action," *i.e.*, a lawsuit. *Id.* ¶ 28.

- 14 -

¶ 42    The *Teymour* court believed that *Gutman* implicitly held that unrelated postdissolution matters constitute separate claims subject to Rule 304(a). *Id.* ¶ 34. Further, *Gutman* reiterated that piecemeal litigation should be discouraged in the absence of just cause. *Id.* ¶ 38.

¶ 43    The court in *Teymour* concluded that this court's case law established that

"(1) predissolution issues are generally related and part of a single claim, requiring the entire matter to be resolved in order for the appellate court to be vested with jurisdiction, (2) simultaneously pending postdissolution matters may be unrelated and, therefore, constitute separate claims, and (3) an order disposing of only one such claim is not subject to appeal absent a Rule 304(a) finding." *Id.* ¶ 41.

The court declined to "follow what, in our view, is a misinterpretation of *Purdy*, a misinterpretation of *Gutman*, and a generous revision of *Carr*." *Id.* For that reason, *Teymour* held that a final order disposing of one of several claims may not be appealed without an express finding that there is no just cause for delay.

¶ 44    We agree with the holding of the Second and Fourth Districts, as well as the court in *Teymour*. Those decision correctly construe this court's case law concerning appellate jurisdiction in dissolution of marriage cases. We find the following reasoning of the court in *Teymour* to be well taken:

"Where a party files one postdissolution petition, several more are likely to follow. Allowing or requiring parties to appeal after each postdissolution claim is resolved would put great strain on the appellate court's docket and impose an unnecessary burden on those who would prefer not to appeal until the trial court resolves all pending claims. To be sure, justice may on occasion require that a final order disposing of a claim be immediately appealed, rather than held at bay until another pending postdissolution claim is resolved. Yet, Rule 304(a) accommodates those circumstances: the trial court need only enter a Rule 304(a) finding." *Id.* ¶ 39.

¶ 45    Although this court and the lower courts have used the terms "claims" and "actions" interchangeably, we now clarify that, for purposes of appellate jurisdiction, unrelated postdissolution matters constitute separate claims, so that a

final order disposing of one of several claims may not be appealed without a Rule 304(a) finding.

¶ 46 In this case, the September 17, 2018, fee award was a final order on a postdissolution petition. In entering the order, the trial court included Rule 304(a) language. Consequently, the appellate court did have jurisdiction over Gregory's appeal of that order. The appellate court thus erred in analyzing the September 17, 2018, order as a predissolution interim fee award and in dismissing the appeal based upon lack of jurisdiction.

¶ 47                                    CONCLUSION

¶ 48 For all the foregoing reasons, we reverse the appellate court's decision, dismissing Gregory's appeal based upon lack of jurisdiction, and remand the case to the appellate court for further proceedings consistent with this opinion.

¶ 49 Appellate court judgment reversed.

¶ 50 Cause remanded.

¶ 51 JUSTICE NEVILLE took no part in the consideration or decision of this case.